IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| GOLDI Y. CAPALUNGAN | : | |
| Petitioner, | : | Case No.: 2:18-cv-1276 |
| vs. | : | Judge: Smith |
| EMMANUEL R. LEE | : | Magistrate Judge: Jolson |
| Respondent. | : | |

---

**PRETRIAL MERIT BRIEF OF RESPONDENT, EMMANUEL R. LEE**

---

Gary Gottfried        (0002916)

609 Office Parkway, Suite B
Westerville, Ohio 43082
Phone: (614) 297-1211
Fax: (614) 297-6387
Email: gary@gottfriedlaw.com
*Attorney for Petitioner*

Gregg R. Lewis        (0041229)
625 City Park Avenue
Columbus, Ohio 43206
Phone: (614) 221-3938
Fax: (614) 221-3713
Email: grl@grlfamilylaw.com
*Attorney for Respondent*

1

## Table of Contents

1. Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
3. Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
4. Law and Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
5. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

## Table of Authorities

I. **Table of Statutes**

1. 22 U.S.C. § 9001(a)(4).

2. 22 U.S.C. § 9003(e)(1)(A).

3. 22 U.S.C. § 9003(e)(2)(B).

4. Hague Convention of Civil Aspects of International Child Abduction, October 25, 1980.

   a. Article 3
   b. Article 12
   c. Article 13

II. **Table of Cases**

1. *Ahmed v. Ahmed*, 867 F.3d 682 (6th Cir. 2017).

2. *Baxter v. Baxter*, 423 F.3d 363, 371 (3d Circ. 2005) (citing *Gonzalez-Caballero v. Mena*, 251 F.3d 789, 794 (9th Cir. 2001).

3. *Blanc v. Morgan*, 721 F.Supp. 2d 749 (W.D. Tenn. 2010).

4. *Friedrich v. Friedrich*, 78 F.3d 1060, 1070 (6th Cir. 1996).

5. *Guevara c. Soto*, 180 F. Supp. 3d 517, 528 (E.D. Tenn. 2016).

6. *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001).

7. *Padilla v. Troxell*, 850 F.3d 168 (4th Cir. 2017).

8. *Robert v. Tesson*, 507 F.3d 981 (6th Cir. 2007).

9. *Taglieri v. Monasky*, 907 F.3d 404 (6th Circ. 2018).

10. *Wasniewski v. Grzelak-Johannsen*, 2007 U.S. Dist. Lexis 50953 (N.D. Ohio).

3

## I. INTRODUCTION

Respondent, Emmanuel Lee, has not wrongfully retained the parties' minor child in violation of the Hague Convention of Civil Aspects of International Child Abduction, October 25, 1980 ("Hague Convention") and the International Child Abductions Remedies Act ("ICARA"). Petitioner voluntarily brought the minor child to the United States to be under the care of his father and consented to the transfer. If this Court finds that there has been "wrongful retention" Petitioner failed to bring her claim within a year and the well settled defense outlined in the Hague Convention applies. Further, if there was a "wrongful retention," the minor child's habitual residence is in the United States as he has become acclimatized and should remain in the care of his father in the United States. Respondent asks this Court to deny Petitioner's request to return the minor child to the Philippines.

## II. STATEMENT OF FACTS

Petitioner, Goldi Capalungan, and Respondent, Emmanuel Lee, who were never married, had a minor child, EZL who was born on August 31, 2012, in the Philippines. Mr. Lee is a citizen of the United States and Petitioner is a citizen of Australia. On November 3, 2016, Mr. Lee was granted U.S. Citizenship and continues to live in Columbus with his family. After the birth of their son, Mr. Lee opened a joint bank account through an international bank (Citibank) in order to help take care of the minor child. Mr. Lee helped to provide care for his son until January of 2016, when Petitioner took off with the child and relocated to Australia without Mr. Lee's permission. Petitioner relocated without informing Mr. Lee where the minor child was living and deprived him of the ability to see his son.

At the beginning of 2017, Petitioner informed Mr. Lee that she was bringing the parties' minor child to the United States in order for her to attend a six (6) month job training in Australia.

4

Petitioner knew that Mr. Lee was going to apply for their son to have citizenship in the United States. On February 22, 2017, the minor child was voluntarily brought to the United States to stay with his father. Petitioner then left the United States and returned to Australia without the minor child. Petitioner let the child's tourist visa lapse, allowed the child's passport from the Philippines come close to expiration, and delayed Respondent's ability to enroll the child in school.

Since bringing the minor child to the United States over two (2) years ago, Petitioner entered into a Shared Parenting Plan through the Franklin County Common Pleas, Domestic Relations Division and Juvenile Branch. Both Petitioner and Mr. Lee attended mediation and agreed that it was in the best interest of the minor child that he be enrolled in school and begin participating in activities. The minor child has been actively involved with church, school, and extracurricular activities. He has celebrated birthdays, holidays, and special occasions with his father and his family in the United States. He has gone on family vacations and trips, and has become close with Mr. Lee's sister, his cousins, and his paternal grandparents. He has excelled in school, made friends, and become settled into the United States under the care of his father.

Petitioner visited the child in December 2017 until January 2018. During this time, she signed a US passport application consent form DS 3053 before going back to Australia. Further, she voluntarily signed all affidavits, court paperwork, and documents for the minor child's citizenship application. On February 16, 2018, the child received his US Passport and on July 13, 2018, the minor child received his Certificate of Naturalization as a United States citizen. The minor child has no permanent residency status in Australia. Petitioner admitted the child was to stay in the United States "indefinitely" and that she was unable to care for the minor child. It was not until October of 2018 that she brought this claim alleging that Mr. Lee "wrongfully retained" the minor child in attempts to take away Mr. Lee's rights to his son.

### III. LAW AND ARGUMENT

The goal of the Hague Convention is to "prevent a child from being taken out of the family and social environment in which its life has developed." *Ahmed v. Ahmed*, 867 F.3d 682 (6th Cir. 2017). Further the court has stated that the purpose of the Convention is " to return the children 'to the State of their habitual residence,' to require any custody disputes to be resolved in that country, and to discourage parents from taking matters into their own hands by abducting a child." *Taglieri v. Monasky*, 907 F.3d 404, 407 (6th Cir. 2018) (*en banc*) (quoting Hague Convention pmbl.).

Article 3 of the Hague convention states that,

> The removal or the retention of a child is to be considered wrongful where – a) it is in breach of rights of custody attributed to a person, an institution or any other body, either a) jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Convention of the Civil Aspects of International Child Abduction*, Article 3 (25 Oct. 1980).

Under the Hague Convention, to secure the return of an abducted child, a petitioner needs to establish by a preponderance of the evidence that "the child has been 'wrongfully removed' within the meaning of the agreement." *Wasniewski v. Grzelak-Johannsen*, 2007 U.S. Dist. Lexis 50953 (N.D. Ohio), *see also* 22 U.S.C. § 9003(e)(1)(A). A petitioner establishes a "wrongful" removal or retention by showing that, "(i) the child 'habitually' resided in the petitioner's country of residence at the time of removal; (ii) the child's removal breached the petitioner's custody rights under the law of his home state; and, (iii) the petitioner enjoyed those rights at the time of the child's removal." *See Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001) (*citing* Hague Convention, arts. 3, 4). "Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the marrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4).

Mr. Lee did not wrongfully retain the parties' minor child in violation of the Hague Convention of Civil Aspects of International Child Abduction, October 25, 1980 ("Hague Convention") and the International Child Abductions Remedies Act ("ICARA").

### A. The minor child's "habitual residence" is in the United States because prior to the alleged "wrongful retention" the minor child was acclimatized to his new surroundings in the United States.

"Habitual residence makes the place where a person customarily lives." *Taglieri v. Monasky*, 907 F.3d 404 (6th Circ. 2018). It can be noted that courts in the Sixth Circuit have preferred to apply an "acclimatization standard" to determine the "habitual residence" of a child. *Robert v. Tesson*, 507 F.3d 981 (6th Cir. 2007). The determination of what constitutes a child's "habitual residence" is one of fact and based on the circumstances of the case. *Id.* at 995. When applying the acclimatization standard,

> The questions are whether the child has been physically present in the county for an amount of time sufficient for acclimatization and whether the place has a degree of settled purpose from the child's perspective. District courts ask these sorts of questions in determining a child's acclimatization: whether the child participated in academic activities, social engagements, sports programs and excursions, and whether the child formed meaningful connections with the country's people and places.

*Id.* at 995. Further, the Court has established the following five (5) factors to consider in determining the habitual residence of a minor child:

> First, habitual residence should not be determined through the technical rules governing legal residence or common law domicile. Instead, courts should look closely at the facts and circumstances of each case. Second, because the Hague Convention is concerned with the habitual residence of the child, the court should consider only the child's experience in determining habitual residence. Third, this inquiry should focus exclusively on the child's past experiences. Any future plans that the parents may have are irrelevant to our inquiry. Fourth, a person can have only one habitual residence. Finally, a child's habitual residence is not determined by the nationality of the child's primary care-giver. Only a change in geography and the passage of time may combine to establish a new habitual residence.

*Id.* at 989. Thus, the Courts regard "meaningful connections with people and places in a county, including academic activities, social engagements, and sports programs as evidence of acclimation." *Id.* at 996. What a kid does in a country is and how they feel about it are just as important as the length of the stay in that county. *Id.*

The minor child's habitual residence is in the United States and living under the care of his father. The minor child first came to the United States in February 2017 when Petitioner brought him here to live with his father. Prior to coming to the United States, the minor child was living with his mother, Petitioner, in Australia. While in Australia, Petitioner has had unstable employment causing an unstable environment and frequent moves for the minor child. However, since the minor child has been living in the United States, he is now acclimatized in the United States. He has lived with his father in the same house for his entire stay here in the United States. He was never an Australian citizen and his residency status was subject to change at any moment. Petitioner claims that the minor child's habitual residence is Australia and that is where the child should be returned to. However, as the court stated in *Tesson*, "geography and the passage of time may combine to establish a new habitual residence."

The minor child has currently been living in the United states for over two (2) years. At the time Petitioner filed her claim in October of 2018, the minor child had already been living in the United States for one (1) year and eight (8) months. That is more than enough time for the minor child to establish a new habitual residence in the United States. Since the Hague Convention requires the child to be returned to their habitual residence, the minor child should stay in the United States as he has become acclimatized to his surroundings. At the time that the minor child lived in Australia, he was only three (3) years old and unable to recall what his life was like at such a young age. However, the minor child is now six (6) years old and able to form memories and

8

opinions about his surrounding and the people and family he has become close with over the last two (2) years.

Since being in the United States, the minor child has been very involved in school, church and extracurricular activities. The minor child has attended AWANA through the church for the past two (2) years, where he has made friends and bonded with his teachers. Further, the minor child has now been enrolled in school for two (2) years where he is excelling and ahead for his age in both math and reading. His MAP test results show that he is above state criteria for children his age. Further, the minor child has been involved with the Barnett Recreational Center's basketball league, where he is in his second season. He has celebrated birthdays, holidays and special occasions with his father and his father's family for the last two (2) years. The minor child is happy, healthy, and thriving in the environment with his father and is acclimatized under the standards for the Hague Convention. The minor child's habitual residence is the United States where he has become a citizen.

> B. **The Petition in this case was filed more than one (1) year after the alleged "wrongful retention" occurred so the well-settled defense outlined in the Hague Convention applies.**

Article 12 of the Hague Convention states that,

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith. The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment. Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

*Convention of the Civil Aspects of International Child Abduction*, Article 12 (25 Oct. 1980). Courts consider many factors to determine whether a child is "now settled" into their new environment. Among the factors considered by the courts in determining whether a child is settled in their new environment are "the age of the child, the stability of the child's residence in the new environment, whether the child attends school or day care consistently, whether the child attends church regularly, the stability of the . . . [respondent's] . . . employment, and whether the child has friends and relatives in the new area." *Blanc v. Morgan*, 721 F.Supp. 2d 749 (W.D. Tenn. 2010).

Petitioner filed her action with this Court in October of 2018. Although Petitioner believes the "well-settled defense" does not apply, Petitioner filed her claim more than one year after the alleged "wrongful retention." Although Respondent does not believe he has wrongfully retained the minor child, if there ever was a "wrongful retention" it would have started in July of 2017. Petitioner claims that she only wished for the minor child to be in the United States for a maximum of six (6) months while she attended job training in Australia which she claimed ended in July 2017. The alleged "retention" would have started in July of 2017. Because Petitioner did not file her action until October of 2018, one (1) year and three (3) months after the "retention" began, the well-settled defense does apply.

Here, the minor child is very much well-settled into his new environment with his father. As previously mentioned, the minor child has been living with his father for over two (2) years at this point. He has been actively involved in both school and church activities. Further, he has been involved with a basketball league for two (2) seasons where he has made friends. The minor child has become close with Mr. Lee's family. He has developed a bond with his paternal grandparents, his aunt, and cousins. The family has attended amusement parks together, as well as they have gone on family vacations together. The minor child has celebrated holidays, his birthdays, and his

10

father's family's birthday celebrations over the last two (2) years. By removing the minor child from the environment that he is now settled into, the Court would be removing him from his home and the environment in which he is accustomed to and thriving in. Based on the factors set out in *Morgan*, the minor child is "now settled" into his new environment and the Court is under no obligation to return the minor child to Australia. He is currently residing in a safe and secure environment under the care of his father and close to his friends and family.

### C. The Petitioner consented to and subsequently acquiesced in the removal or retention when she voluntarily brought the minor child to the United States.

Article 13 of the Hague Convention states that,

> Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that – a) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or *had consented to or subsequently acquiesced in the removal or retention*; or b) there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

*Convention of the Civil Aspects of International Child Abduction*, Article 13 (25Oct. 1980) (*emphasis added*). Neither "consent" or "acquiescence" are defined in the Hague Convention. *Guevara c. Soto*, 180 F. Supp. 3d 517, 528 (E.D. Tenn. 2016) (citing *Friedrich v. Friedrich*, 78 F.3d 1060, 1069 (6th Cir. 1996)). The defense of acquiescence requires "a formal act or statement, such as testimony in a judicial proceeding, a written renunciation of rights, or a consistent attitude of acquiescence over a significant period of time." *Friedrich v. Friedrich*, 78 F.3d 1060, 1070 (6th Cir. 1996). "The consent defense involves the petitioner's conduct prior to the contested removal or retention, while acquiescence addresses whether the petitioner subsequently agreed to or accepted the removal or retention." *Baxter v. Baxter*, 423 F.3d 363, 371 (3d Circ. 2005) (citing

11

*Gonzalez-Caballero v. Mena*, 251 F.3d 789, 794 (9th Cir. 2001). The respondent bears the burden of establishing acquiescence by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B). In *Padilla v. Troxell*, 850 F.3d 168 (4th Cir. 2017), the court held that the mother of the minor child consented to the "wrongful retention" based on the fact that she helped obtain a passport for the child and the conduct she exhibited.

Petitioner has consented to and has acquiesced to the minor child being in the United States over the course of the last two (2) years. Petitioner voluntarily brought the minor child to the United States in February of 2017 to be under the care of his father. Since bringing the child here, she voluntarily entered into a shared parenting plan with Mr. Lee. She agreed that it was in the best interest of the minor child to be enrolled in school and get involved with activities in the United States. She agreed to Mr. Lee being the sole provider for the child by entering into the shared parenting plan with Mr. Lee. Further, Petitioner admitted that the minor child was to live in the United States indefinitely and agreed that Mr. Lee would be responsible for all expenses and care for the minor child while in the United States. She consented by bringing the child to the United States and then leaving him here when she came to the United States to visit. She agreed that the minor child should become a United States citizen and signed his application acknowledging this fact. It has been the intention of both of the parties to live in the United States. Petitioner's alleged "wrongful retention" claims only arose after she had a falling out with Mr. Lee. Her acquiescence over the last two (2) years has shown a consistent attitude that the minor child should remain in the United States with his father.

## IV. CONCLUSION

Petitioner is unable to prove that the minor child was wrongfully retained in violation of the Convention on the Civil Aspects of International Child Abduction at the Hague on October 25,

1980, or the International Child Abductions Remedies Act ("ICARA"). The minor child's habitual residence is in the United States where he should remain and be under the continued care of his father. He has been acclimatized to the United States as he is involved in multiple school, church, and extracurricular activities that have allowed him to settle into his new environment. Over the course of time the minor child has been in the United States, Petitioner has consented and acquiesced in the alleged "wrongful retention" and the minor child should not be sent back to Australia where he no longer is acclimatized. Petitioner voluntarily brought the minor child to be in the care of his father. No wrongful removal or retention has occurred. Mr. Lee asks this court to deny Petitioner's claims and rule that the minor child is rightfully in the United States with his father.

                    Respectfully submitted,

                    /s/ Gregg R. Lewis
                    Gregg R. Lewis      (0041229)
                    625 City Park Avenue
                    Columbus, Ohio 43206
                    Phone: (614) 221-3938
                    Fax: (614) 221-3713
                    Email: grl@grlfamilylaw.com
                    *Attorney for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that an accurate copy of Respondent's Pretrial Brief was sent via email/e-filing to Petitioner's Attorney:

GARY J. GOTTFRIED
608 Office Parkway, Ste: B
Westerville, Ohio 43082

this 5th day of April, 2019.

Respectfully submitted,

  /s/ Gregg R. Lewis
Gregg R. Lewis   (0041229)
625 City Park Avenue
Columbus, Ohio 43206
Phone: (614) 221-3938
Fax: (614) 221-3713
Email: grl@grlfamilylaw.com
*Attorney for Respondent*