IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

GOLDI Y. CAPALUNGAN

    Petitioner

v.                                                    Case No. 2:18-cv-1276

                                                     Judge George C. Smith

                                                     Magistrate Judge Kimberly A. Jolson

EMMANUEL R. LEE

    Respondent

## REPLY OF PETITIONER TO THE RESPONDENT'S MEMORANDA CONTRA TO THE PETITIONER'S OBJECTION TO THE REPORT AND RECCOMENDATION OF THE MAGISTRATE JUDGE DATED APRIL 26, 2019

The Respondent has filed with this Court on May 10, 2019 a memoranda contra to the Petitioner's objection to the Magistrate Judge's Report and Recommendation dated April 26, 2019. Petitioner hereby submits this response to the Respondent's memo contra.

**RESPONSE OF PETITIONER TO THE ARGUMENTS RAISED IN RESPONDENT'S MEMO CONTRA TO PETITIONER'S OBJECTION NO. 1:**

The Respondent in addressing the Petitioner's first objection to the Magistrate's Judge's decision has misstated many of the operative facts of this case. For example on page 3 of the Respondent's memo contra the Respondent states that the child " since being brought here in February 2017 and left here by his mother in December 2017 , the habitual residence of the child changed from Australia to the United States. **The Petitioner did not file her Petition until October of 2018, allowing enough time for the habitual residence to change from Australia to United States**". ( emphasis added by Petitioner). While the Petitioner does not disagree that the child was brought to the United States in February 2017 what is not stated by the Respondent is that the agreement between the Petitioner and the Respondent was that at all

1

time the Respondent agreed to return the child to Australia. This "agreement' to return the child to Australia was confirmed by the Magistrate Judge when the Magistrate Judge in her decision on page 3 found as follows:

> Respondent was consistently evasive and less than candid when testifying about the parties agreement to return EZL to Australia. He did, however, concede that the parties had agreed EZL would be returned to Australia and the he failed to comply with that agreement.

The Respondent in his memo contra also incorrectly states that the period of time from December 2017 ( and which was the date that the wrongful retention was determined by the Magistrate Judge to have occurred see page 12 of the Magistrate's Decision) until the time that the Petitioner filed her petition for the return of the child ( October 2018) was sufficient time to allow the change of habitual residence to occur. The period of time to be examined to determine a child's habitual residence is at the point in time the wrongful retention occurs and not events which occur subsequent to the date of the wrongful retention. In correctly stating the period of time to be examined the Magistrate Judge stated in her decision at page 12

> The date of the wrongful retention is important because it " is used to fix the time period available for assessing what country is properly the child's habitual residence. .

Contrary to the statement of the Respondent the period of time subsequent to the date of the wrongful retention are not relevant to the Court's determination of habitual residence.

The Petitioner has acknowledged in her objection that some of the cases which the Petitioner has identified are not from this Circuit. However, to classify these non-Sixth Circuit cases as not having any relevance is to ignore the fact that in deciding the issue of habitual residence. As the Court of Appeals in Ahmed v Ahmed 867 F. 3rd 682 said in addressing the value of non-Sixth Circuit cases stated:

> While we are free to diverge, we "routinely look to the majority positions of other Circuits in resolving undecided issues of law " and we value " harmony amount the Circuits"

See also Taglieri v Monasky wherein the Sixth Circuit in addressing the 2 standards to determine habitual residence stated " Every circuit to consider the question looks to both standards" and then proceeded to identify 10 decisions issued by the First Circuit Court of Appeals to the 11th Circuit Court of Appeals.

While the cases which the Petitioner has cited ( Flynn v Borders and Palencia v Perez) are not from this Circuit the Petitioner believes that the case Flynn and Palencia cases are instructive to this court in providing insight into how other district courts and courts of appeal address the issue presented by Flynn and Borders. Contrary to the statement by the Respondent that the facts of Flynn are " very different from the facts of this case" the Petitioner believes that the facts of Flynn and the outcome reached in Flynn are similar to the facts in this case. In Flynn in finding that the child's stay in Ireland was only temporary ( for the summers) the District Court found that the child's summer visits ( although regular) were temporary and thus the child's habitual residence had not changed from Ireland to the United States.

In filing his memo contra the Respondent has apparently chosen not to address a case which appears to be on " all fours" with the present case. That is the case of Garcia v Pinelo, 125 F. Supp, 3d 794. ( N.D. Ill 2015). In Garcia the parents had an agreement that the child would reside with Father in Chicago for the 'school year". At the conclusion of the school year Father refused to return the child to Mexico. Notwithstanding the fact that the child " adapted to life in the United States " and improved in school, made friends, built family relationships and joined clubs, the court in Garcia, ordered the return of the child to Mexico. The undisputed facts in this case are similar to the facts in Garcia v Pinelo. Even though the minor child had been in the United States for a period of time before his wrongful retention the agreement between the Petitioner and the Respondent was that the minor child's stay in the United States was temporary in nature and he was to be returned to Australia.

The Respondent also attempts to distinguish the facts of the present case with the facts and outcome reached in Palencia v Perez. In attempting to distinguish the present case from the facts in Palencia the Respondent on page 5 of his memo contra states the following" Further, Petitioner claims that the facts of Palencia v Perez are similar to the facts of this case. However, in addition to being non binding precedent,

3

the case was decided on that fact that the mother in that case made affirmative representations to return the child and then never did. **Respondent never made any affirmative representations to return the minor child to the Petitioner, and it was never his intent that the minor child should live in Australia.** (emphasis added by Petitioner). The record in this case is replete with evidence that the Respondent represented to the Petitioner that the child would be returned to Australia. See for example Magistrate's Judge's decision page 3 where the Magistrate Judge states "He did, however, concede that the parties had agreed EZL would be returned to Australia and that he failed to comply. Also see page 6 of the Magistrate's Judge's report and recommendation where the Magistrate Judge states "As best the Undersigned can tell, the parties agreed that EZL would be returned to Australia after he ( EZL) received his permanent residency in the United States...". Finally, see page 8 of the Magistrate Judge's report and recommendation where the Magistrate Judge found that "Before Petitioner returned to Australia, Respondent agreed to return EZL when his U.S passport was issued.". It is hard to reconcile the Respondent's attempt to distinguish this case from Palencia on the basis that the Respondent in the present case made no " affirmative representations to return the child to the Petitioner" when the evidence and the findings of the Magistrate Judge clearly establishes that there was an agreement between the parents of EZL to return to the child to Australia and that the Petitioner relied upon that agreement and allowed EZL to remain in the United States until EZL obtained his U.S. Citizenship.

Finally, this Court's attention is directed to the Djeric v Djeric Case No 2:18-CV-1780 a decision issued by Judge Sargus wherein the Court ordered the return of a minor child even though the child had been in this country for approximately 10 months, had attended school, played sports and had close family ties with the Respondent and his family who lived in Columbus Ohio.

Based upon the foregoing arguments the Petitioner requests that the Court not adopt the report and recommendation of the Magistrate Judge. Petitioner requests that the Court issue an Order sustaining the Petitioner's petition for the return of EZL to Australia.

**RESPONSE OF THE PETITIONER TO THE ARGUMENTS RAISED IN RESPONDENT'S MEMO CONTRA TO PETITIONER'S OBJECTION NO. 2:**

The Petitioner does not dispute that there are two standards by which a District Court in the 6th Circuit may determine the habitual residence of a child. Those two methods by which a District Court may determine habitual residence are the acclimatization test and the shared parental intent test. Nor does the Petitioner dispute that the Shared Parental Intent test adopted by the 6th Circuit in the Ahmed case has been applied generally by courts in the Sixth Circuit to cases involving young children. However, a careful reading of both Ahmed and Taglieri cases does not indicate or limit a District Court's use of the shared parental intent to cases only involving very young children. A District Court may use either the acclimatization or the shared parental intent test when the circumstances of the case warrant the use of either test to determine the habitual residence of a child. The discretion to use either the acclimatization or the shared parental intent test was made clear in Taglieri case when the Court of Appeals in affirming the District Court that the use of either test should be based the facts of the case and not upon "technical rules" but the " the facts and circumstances of each case". Also in the Ahmed case, the Court of Appeals for the Sixth Circuit in analyzing the use of the shared parental intent standard and the acclimatization test surveyed the other Judicial Districts which employ both of these standards. While the Court of Appeals in Ahmed did state that the primary approach to the determination of habitual residence was whether the child had become "acclimatized and the second approach was "shared parental intent." the Court of Appeals stated that every circuit to **consider the question looks to both standards**. Ahmed, 867 F.3d at 689; see Mauvais v. Herisse (emphasis added by Petitioner). Thus, it would appear that while the " primary approach " to the determination of habitual residence is whether the child was acclimatized nothing in the decision of the Court would prohibit a District Court from employing the "shared parental intent " where the facts and circumstances warranted the use of the shared parental intent approach".

Petitioner submits that this is a case where the Court should extend the application of shared parental intent test to the facts of the case. The evidence in this case as found by the Magistrate Judge was

5

that the Parties always intended for the child to return to Australia. Despite the statements of the Respondent in his memo contra that "they all were to end up in living in the United States" ( see page 7 of the Respondent's memo contra) the facts as developed at trial and as found by the Magistrate Judge do not support such a conclusion. The Magistrate Judge in her report and recommendation never found that it was the intent of the parties "that they would all end up living in the United States". Rather the evidence in this case was that the intent of the parties as expressed by their agreement was that EZL was to return to Australia once the child had acquired his US Citizenship. While there may have been some discussion early on in the parties relationship for the Petitioner and EZL to live in the United States, it is clear from the evidence that at the time of the wrongful retention in December 2017 that it was the shared intent of both the Petitioner and Respondent that EZL should be returned to Australia. Nor does the fact that the Petitioner agreed to allow the child to obtain US Citizenship, or that the Petitioner entered into a shared parenting plan indicative of a shared parental intent for the child to remain in the United States. The testimony in this case was that the purpose of the shared parenting plan was to allow the child to obtain governmental services as well as attend school while he was in the United States. There was ample evidence that the purpose of the shared parenting plan was not to make the United States the child's residence. Nor does the fact that the Petitioner changed the Australian child support arrangements indicate a shared parenting intent to make the United States the child's habitual residence. The testimony in this case was that the Respondent was under an order to pay child support through the Australian child support agency. Because the child was living in the United States the Respondent was relieved of the responsibility to pay child support. However, the fact that the Respondent was relieved of the obligation to pay child support does not indicate that the child would remain indefinitely in the United States or that the United States was to become the child's country of habitual residence.

The Respondent also incorrectly in his memo contra states that the Petitioner did not raise the "shared parental intent" standard until such time as the Petitioner filed her objection to the Magistrate's Judge's report and recommendation. During discussions with the Magistrate Judge prior to the

commencement of trial, the question was posed to the Magistrate Judge regarding which standard ( acclimatization or shared intent) the Magistrate Judge was going to employ to determine habitual residence. The Magistrate Judge indicate that the Parties should present evidence on both standards and the Magistrate Judge would then decide which standard to apply.

This matter is before this Court upon the Petitioner's objection to the report and recommendation of the Magistrate Judge. In this capacity this Court now acts as the Appellate Court in reviewing the decision of a lower court. Petitioner submits that all the evidence in this case indicates that the Petitioner and Respondent had an agreement as found by the Magistrate Judge to return EZL to Australia. As the Magistrate Judge stated in her report and recommendation "Respondent has manufactured a favorable status quo that he will undoubtedly rely on in any future custody proceedings between the parties. **But that status quo is contrary to parties shared intent which the acclimatization standard** does not permit courts to consider in resolving the habitual residence question in cases like the one before the Court here." (Emphasis added by Petitioner -See Magistrate Judge report and recommendation page 15). The purpose of the Hague Convention is to return children who have been wrongfully removed from their country of habitual residence.

The evidence in this case was, as the Magistrate Judge found, that the parties shared an intent to return the child to Australia. There is no reason why the shared parental intent standard should not be applied to this case to return EZL to Australia. It would be contrary to the stated purpose of the Hague Convention for this Court to not return the child to Australia. It would also reward the Respondent for his manipulative and deceitful conduct. As the Magistrate Judge stated in her report and recommendation by not returning EZL to Australia and allowing EZL to remain in the United States such a decision "appears to reward the Respondent for conduct that undermines the Conventions' mission". (See Magistrate Judge's report and recommendation page 15).

This matter is before this Court upon the Petitioner's objection to the report and recommendation of the Magistrate Judge. In this capacity this Court now acts as the Appellate Court in reviewing the

decision of a lower court. In the Taglieri case the Court of Appeals commenting upon its role stated the following:

> In answering that question, we must let district courts do what district courts do best make factual findings—and steel ourselves to respect what they find. While we review transcripts for a living, they listen to witnesses for a living. While we largely read briefs for a living, they largely assess the credibility of parties and witnesses for a living. Consistent with the comparative advantages of each role, clear-error review is highly deferential review. In the words of the Supreme Court, we leave fact finding to the district court unless we are "left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). In the words of the Sixth Circuit, we leave this work to the district court unless the fact findings "strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." United States v. Perry, 908 F.2d 56, 58 (6th Cir. 1990) (quotation omitted). ( Taglieri at page 7)

Petitioner submits that to allow EZL to remain in the United States is wrong and this Court should order that the petition to return EZL to Australia be granted.

**CONCLUSION:**

For the reasons set forth in the Petitioner's objection and Petitioner's response to the Respondent's memo contra the Petitioner requests that the Court find upon review of the Magistrate's Judge's decision of April 22, 2019 find that the Magistrate Judge committed error in denying the Petitioner's petition for the return of the minor child pursuant to the provisions of the Hague Convention on the Civil Aspects of Child Abduction.

Respectfully submitted,

Gary J. Gottfried Co LPA

/s/ Gary J. Gottfried

_____

Gary J. Gottfried (0002916)

Attorney for Petitioner

608 Office Parkway Suite B

Westerville, Ohio 43082

614-297-1211

Gary@Gottfriedlaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of the Petitioner's reply to the Respondent's Memo Contra was served upon Gregory Lewis Counsel for the Respondent by way of the Court's electronic filing system this 13 day of May 2019.

/s/ Gary J. Gottfried

_____
Gary J. Gottfried (0002916)
Attorney for Petitioner